Next matter is Baugh v. Secretaryofthe Navy. Mr. Shulman, are you ready to go? We're good. May it please the court. My name is David Patrick Sheldon, and I represent Lieutenant Commander Junius Baugh. With leave of the court, I'd like to reserve five minutes of my time for rebuttal. Let me ask you this. Let's assume that you're absolutely right. What's the remedy? The remedy is... What is the practical, workable remedy? Let me put it that way. Judge McKee, Chief Judge McKee, the remedy is to remand this back to the board for correction of naval records so that the Navy can take proper action consistently. What's the proper action? The proper action is to give validity and to accomplish what Secretary Rosker directed the Navy to do. And simply shrugging your shoulders, as Rear Admiral Wilmot did in response to Secretary Rosker's directive, was not proper. A individual under the regulations in Rear Admiral Wilmot's position can direct that another officer draft a fitness report. We know that officers and admirals and generals routinely appoint officers to investigate. You probably have, at least I think you have, a pretty good argument with respect to Rear Admiral Wilmot. But with regard to the Assistant Secretary Beecroft, couldn't you... Isn't what she is doing is, you can call it construing or just clarifying the prior order of her predecessor? Well, number one, Your Honor, I don't think, Judge Amber, that she's simply clarifying. I think that what she's doing is nullifying Secretary Rosker's decision four years after the fact. And certainly an agency can reconsider its decision, but it has to do so in a timely manner. More importantly, it has to do so in a rational manner. And simply allowing for Rear Admiral Wilmot to say to Secretary Rosker, no, I'm not going to do it, when there's no intervening events, when there's no attempt by Rear Admiral Wilmot to simply accomplish what the Secretary of the Navy, the Assistant Secretary of the Navy, directed her to do. But you do have a situation where a memo is put into the file which would show to the casual observer that there's a reason why the fitness reports are not here for these two periods. You cannot speculate. The fitness reports are missing pursuant to Navy regulation. And there's also, going back to the initial order, I guess the BCNR, a provision that no report was to be put in that he didn't approve of. So aren't we in the area of speculation? Because you may have gotten the Rear Admiral to order somebody who knew his personal work to do a fitness evaluation that he wouldn't have been the least bit happy with. We've ended up in the same situation we are today. Chief Judge McKee, I completely agree with you that it is mere speculation without accomplishing what the Secretary of the Navy directed to be done in this case. And it's to put into a record, you have seven fitness reports from 1989 till 1994, five of which were removed for racial discrimination, two of which were removed for reprisal action. To eliminate those, and that's why Secretary Rosker adopted the advisory opinion that was written by B.B. Herman from Bupers down in Millington. Because Mr. Herman said, if you're going to put BAW up there for continuity, OERs, fitness reports that just say he was here, don't hold this against him, but you can't use these reports one way or the other. That basically eliminated any chance of him to be promoted. It simply was impossible. That's why Rosker directed what he did. That's why Rosker directed Rear Admiral Wilmot to draft reports. And to simply shrug your shoulders, as I contend that Wilmot did in this case, is not acceptable. It is not acceptable because there is a mechanism. Is this routine? I'm sorry, yeah. Explain the mechanism. I was trying to figure out how this is done after the fact, when the individual signing the report simply has no knowledge. How do they go about redoing the report? And, of course, there was a directive saying that if it turns out the report is more negative than what was in here before, you can't do it. So it was a conditional recommendation. This is a unique case in that there's so many reports that are missing. Generally, one doesn't go back. I submit an extraordinary action in that Rosker did say go back and draft up evaluations, and I believe he did so because he saw how egregious the facts of this case were. In a normal situation where you have for continuity purposes OERs, you may have one or two. I do this all the time. You ask the board to take out one fitness report. Okay, the officer has fitness reports as a lieutenant commander that span four years. So he has three other benchmarks on which to be considered. Then that is referred over to a special selection board. And remember that Rosker in this case set aside two of the passovers for promotion. In that case, then the officer is compared to his peers or her peers, and the special selection board makes a decision. And everything is basically blacked out. We don't know who the players are. So the individual, the officer concerned, gets a fair reading. But in this case, where you have so many for continuity purposes OERs or fitness reports, it's virtually impossible without giving effect to what Secretary Rosker had directed the Navy Admiral to accomplish. How can we say? I mean, you make a good argument. And in terms of what any of us may have done had we been in Wilmot's place, we may have said, well, I can't, I don't know this guy's work, but I'll find somebody who does. But the fact that her position was, well, I don't know anybody who, I don't know his work. And so I'm just going to indicate I don't know his work. How can we say that that was arbitrary or capricious, which is the standard we have to use? Well, number one, that's contrary to law because she can designate under the correct BUPERS instruction that we've cited. That doesn't make it contrary to law unless the law mandates her to designate someone. But simply saying, well, I can't do it, hear no evil, see no evil, speak no evil, is not enough to give effect to Secretary Rosker's decision. She can direct somebody, and we know as a matter of routine, every day in the military, every day commanding officers, admirals, generals, colonels, they say, wow, an issue came up, whether it's a fitness report, whether it's an allegation that somebody is sexually harassing somebody. The time here is so long. Then wouldn't the appropriate mechanism have been to go back to Assistant Secretary Rosker and ask either for an amending of the order or to have Rosker order Wilmot to designate someone else familiar with the Klan's work to do the report? Absolutely. But I submit Admiral Wilmot has the inherent authority under the regulation to designate somebody. My initial question is that when you got the order from Assistant Secretary Rosker in 1994, it didn't seem like much happened until the new person who replaced Rosker, Beecroft, in 1998, changed things around. As I understand Chief Judge McKee's question, why wasn't something done in 94, 95, saying, hey, wait a minute, they haven't done anything. It's been six months. It's been nine months. It's been a year. Here we have a four-year wait. Why wasn't somebody all over, especially while Rosker was still there? I think that there was a presumption that it was, and I concede that's a very good question. I think that there was a presumption that these reports were being drafted. Commander Baugh did go back after the fact and say, gee, these for continuity reports hurt me again. I got passed over at the SSB. I also got passed over in the normal course. Do we know why he didn't go back? Does he have a right to? I don't know. Yes, he can, based upon, I believe, new evidence. But the bottom line is that Wilmot had the authority. She had the direction. She had the order to do this. But she wasn't acting. And so don't you need to? When did Rosker step down? He gave this order in 94, and then in 98, Beecroft was in there. So when did Rosker step down and Beecroft come in? I believe he left in 96. So that's a couple of years, or nearly a couple of years, at least. It would seem that you want to go back to that person who ruled in your favor by waiting. If I may, Your Honor. That's a good point. However, having practiced before the BCNR and in each of the services, I can tell you that having these cases tend to languish. And I see my time is up. Go ahead. But these cases languish, and it's a matter of staffing. There are so many people petitioning, so many service members petitioning, that the Board is just so much going on. And even when you're represented by counsel, counsel may not get a decision from. So I think that there are reasons. But the bottom line is, Wilmot could have appointed somebody. We appoint investigating officers for court-martials, for administrative boards, for investigations. This is someone who had seven of his reports omitted. Five years of his reports omitted from his record on a 20-year record because he was racially discriminated and because he was reprised. That is unjust. This statute is a remedial statute. Rosker gave the remedy. The Navy never accomplished it. Thank you. Thank you. Thank you. May it please the Court, my name is Richard Mensinger. I represent the Secretary of the Navy in this case. In this case, Rosker gives an order, and the order has to be followed. And Wilmot says that she's not the one, she doesn't know the person, but under Instruction 1611, she can delegate that. Why didn't she? She didn't delegate it because Assistant Secretary Rosker's directive said that the immediate superior-in-command should make the report. She determined that she was not. The immediate superior-in-command can designate another officer to do so. That's straight out of the 1611-1A. She certainly can designate someone else to do that, but she didn't have to. And I think in one of the questions to Appellant's counsel, that was an important fact. We've got to remember the standard review here. This is a case under the APA. If you're right, then isn't it up to Wilmot to go and apprise herself of what the facts were? If you've got five years missing from this man's record, the man's memories are not that fuzzy. People can go back and try to put things together. Maybe it ends up it'll be worse than before. So maybe in the end, awe does not win. But somebody has to go through the paces here, and then you wait four years to try to get Beecroft Aircraft in order to, in effect, undo what Rosker had done. I don't see how you can necessarily do it then, because if I look at 32 CFR 723.9, it says, after final adjudication, further consideration may be granted only upon presentation by the applicant, which in this case would be the Secretary, of new and material evidence or other matter not previously considered by the Board. I don't know if anything's new. Well, there certainly would be new evidence. The new evidence would be the claim in this case that the Weir Admiral Wilmot failed to comply with Assistant Secretary Rosker's directive. That's because she caused it by not doing anything. Well, certainly there's either two possibilities here. Either the appellant could have filed a motion for reconsideration with the Board, saying that, in fact, the new evidence here is that Weir Admiral Wilmot acted arbitrarily and capriciously, failed to do whatever investigation they felt was appropriate, and that would be the new evidence that would be appropriate for a reconsideration. Alternatively, they could have filed just a completely new petition before the Board for correction of naval records if they felt that was wrong. I mean, I think going back to one of the things that was said before is, we've got to get the chronology here. This was a petition that was filed in March of 1994. By December of 1994, the fitness report memorandum was in the file. Another important thing is the appellant's counsel indicated this eliminated any chance of promotion for the appellant. That's not true. In May of 1995, five months after the fitness memorandum report was in the file, there was a special selection board that promoted him from lieutenant to lieutenant commander. And that was retroactive? And that was retroactive to 1993. So the notion that there would be no possibility of promotion is just not borne out by the facts. He was promoted five months later. At this point, I'm not sure what he gets. I don't know if he gets increased pension rights, or it may just be the principle that it's his reputation at stake, and that may be enough. The point is that Rosker gave an order. Wilmot didn't do anything other than say, I don't know the guy. I'm not going to abide by that order. Well, we don't know that. The record says that she did not know the person. She was not in a position to do the memorandum. We don't know what other investigation, because there's nothing in the record to that effect. That's speculation as to what she may or may not have done. She determined that she was not in a position to prepare a memorandum. And essentially what the appellant is asking for her is to go back, the Navy to go back through, essentially the exercise of drafting a memorandum for fitness reports from 1993 and 1994, that it's completely speculative if those reports would be better than the reports that were taken out of the file. But they're asking. And, in fact, there's good reason to think that they would not be better, because number one. That's irrelevant for today's purposes. You're correct. It may end up worse than before. But what we've got here is that there's an order after a lot of looking, after a lot of people have gone through the process, Rosker determines that we have to put something in this person's record, true reports, and he gives an order, and the order is not complied with. The order is complied with. He specifically directed the immediate superior in command to prepare a report. And the reason he directed her. The order was for a fitness report. Pardon me? Wasn't the order to prepare a fitness report? To make a fitness report and put it in the file as long as it was no lower than the previous report. The memo that was put in the file that says this memorandum is being filed in lieu of a fitness report. In order to prepare a fitness report, and the memo that goes in in response is a memo in lieu of a fitness report. How is that compliance with the order? Well, I guess the way we look at it is that Rear Admiral Wilmot is entitled to reasonably interpret what Assistant Secretary Rosker said. What we have here. I assume the Rear Admiral understands what a fitness report is. And so she knows if she submits a memo that says it is being submitted in lieu of what she was told to do, she's not doing what she was told to do. She's got a reason for not doing what she was told to do, but she had to know she wasn't doing what she was ordered to do. Well, she was told by Assistant Secretary Rosker that she was to draft replacement fitness reports. I think what the record is clear on is she made a determination that because she did not know Lieutenant Baugh, because she was not in a position to evaluate him properly, that she did not need to go through the fruitless exercise of drafting a report that would have no basis in reality. But what about the instructions that I talked about, 1611-1A, which says she can designate somebody? Why would she do that? I'm not sure if she decided whether there was nobody else there. What we know here is. Like nobody on the face of the earth knows this man? Well, I'm not sure what the situation is. It's not in the record. But Captain Sizemore is the reporting senior who made the report that was challenged. The subsequent person, Captain Scott, who came into the position and subsequently prepared reports for Lieutenant Baugh, Lieutenant Commander Baugh in 1994 and 1995, he subsequently challenged those reports as also being tainted by discrimination. Those reports were at about the same level. I thought those were retaliatory. He argued they were retaliatory. Well, actually the Board for Correction of Naval Records in that subsequent decision did not upheld, found that there was no discrimination and it was not retaliatory. And, in fact, Captain Scott, the subsequent supervisor for Lieutenant Baugh, said that her reports, which were about what he got before, were generous. And in that situation what had happened was they actually, the Board for Correction of Naval Records actually went back to the person who prepared the reports, Captain Scott. She made a report. In the case we have here that's at issue, the Board for Correction of Naval Records never even got any report from Captain Sizemore who was alleged to have discriminated or retaliated against Lieutenant Baugh. There's nothing in the record where they got any report from the alleged discriminating official. But then how did they know whether or not any subsequent report would be worse than the report that they said was discriminatory? They must have looked at something to get a baseline that would tell them whether or not a subsequent report was better or worse. I guess what I'm saying is Captain Scott, who became the superior for Lieutenant Baugh after Captain Sizemore and wrote subsequent reports, those reports were about the same. If you look at those that are in the file there, a combination of predominantly A's and a couple of B's. And those reports that were for the end of 1994 and 1995 were subsequently challenged in another action before the Board of Correction of Naval Records. And the claim was rejected. You're saying the reports were predominantly A's and a couple of B's were viewed as, it's like Harvard rate inflation? A couple of A's and a couple of B's is now a bad thing? No, no, that's a good thing. There's got to be other schools, too, that may have that problem. No, his reports were essentially good. And that's why, I mean, it's… What's at stake? What is at stake here? I'm not sure what's at stake here because what we have is this happened 18 years ago and we're talking about two reports from 1993 and 1994. We also have a situation where Lieutenant Ball was promoted in 1995 after the fitness report memorandum went into the file to Lieutenant Commander. And then he went four years, it took him four years before he went, his counsel went to the Assistant Secretary and asked for reconsideration, appealed the matter. The Assistant Secretary, Assistant Secretary Beecroft, then determined that Rear Admiral Wilmot had acted properly and that it was not practicable to place any, prepare replacement fitness reports. The question I asked earlier, was it too late for them to try to do that? And also, what new evidence did they really have? If you say the new evidence was Wilmot, for example, well, Wilmot made that decision back in 94, 95. We're now in 98. Well, they could have done that at any time after the fitness report memorandum went in the file. They would be making the same claim. It's like latches. You've waited too long. You've got a final and conclusive order of Rosker and it's got to be complied with. And if it's not complied with, then you wait four years and say, okay, we didn't comply with it in effect, but here's why and we want you to clarify or annul whatever word you want to use. It may be too late. Well, that's the final agency action. The final agency action is here is what Assistant Secretary Becroft did. And you've got to look at that and she essentially, she was in the same position as Assistant Secretary Rosker. She took his position. She was entitled to go back in the same way. Nothing had really happened to court. It's interesting that four years later, Becroft can go back and put everything back together and look at it and make a decision, which is a bit different than Rosker, but Wilmot can't do that with regard to the direct order that she had to put fitness reports into the file. Well, she made a decision. Assistant Secretary Becroft made the decision that Rear Admiral Wilmot had acted properly and that there was no point in going back then in 1999, in February of 1999, and drafting replacement fitness reports that were not even clear would have gone in the file. Of course, it's around this time that he doesn't get the additional promotions that he was seeking. Well, that's not part of this record. But obviously we're talking about fitness reports from 1993 and 1994 when he was lieutenant. Remember, he was promoted to lieutenant commander in 1995. So if you're thinking about what would a board look at in 2000 or 2004, what they would look at is presumably how he had performed as the lieutenant commander, not what he had done seven years ago. And again, it just comes back to it's entirely speculative as to what those would have been. And then we have a whole thing. I agree it's entirely speculative. It just sounds like there's a back story here and we're never going to know what it is. Well, I mean, I think it's important to note that even in the initial petition here before the Board for Correction Enabled Records, the petitioner did not initially ask for draft me replacement fitness reports. That was something that he specifically did not ask for. Where did that come from? The admiral decided to issue the order? They were giving him that relief? Exactly. The assistant secretary determined that because there was this gap in the file, we should make the attempt to draft additional reports. The Board for Correction Enabled Records had decided not to issue that relief because, number one, Lieutenant Ball had not asked for it. Number two, they weren't clear that he would be happy with whatever report came out of it. And number three, they felt that he could explain to any selection board the gap. The fitness report memorandum also makes very clear and protects Lieutenant Ball or anyone else in a similar situation because it says that it's not to be taken into consideration in any promotion. Let me ask you a hypothetical question. Let's roster orders that their fitness reports be done. Wilmot actually does them. They are favorable to Ball. Can someone, can Beecroft then go and say that I rescind Rosker's order and therefore these fitness reports, even though they're favorable, now we're going to take them out and just put memoranda into the file? I think, well, obviously that's not what happened, but I think the answer to that would be yes, she could. She's in the same position as Assistant Secretary Rosker. The agency has the inherent right to reconsider or alternatively here ratify what was done. And in both those cases, she would be in the same position, have the same rights, have the same power that Assistant Secretary Rosker would have been in four years earlier. And that's essentially what we do. And then we have a situation where Lieutenant Ball does not even bring a case until 2010. So nothing's ever final then? Pardon me? So nothing's ever final? No, it's final. Assistant Secretary Beecroft's decision is final. That's the final decision. And what we need to, what the court needs to find here. Why was Rosker's decision not a final decision? Well, Rosker's, because the, under the statute, 1552A, it says the correction is the final decision. The correction is the final. Certainly he issued something. Rear Admiral Wilmot reasonably interpreted that, not to require her to draft the report. This is a digression. Your brief on pages 31 and 32 suggested that 1552A applies only to officers other than military officers? That can't be true, right? Well, no. I mean, there's legislative history in the Ash case that talks about that. The reason the finality provision was put in there is because they didn't want other agencies essentially relitigating decisions by a board for correction of naval records. That's a different situation than here where we're asking, is the agency entitled itself to decide what's the final decision? If there's a mistake, if there's a clerical mistake, if something illogical's in the decision, can the agency go back and correct it? Can the agency reasonably interpret that order? Then whatever is the final order, the final correction, certainly that's final and it's final for everyone. Thank you, Your Honor. Thank you, sir. Mr. Sheldon, you reserve some time. Judge Amber, I'd like to begin with your question regarding what's final and what's not. Secretary Rosker's decision was final agency action under 1552A4. That's the plain language and the plain meaning of the statute. That's what's final and it is by me. Certainly Ash supports that notion. Nothing in the interim did change. She, in effect, nullified Secretary Rosker's final decision that was taken in 1994. A couple of other things to clear up, what's at stake? You asked an important question, is why are we here? What's at stake? You're looking at promotion from lieutenant commander to commander, just as what was awarded previously, or lieutenant commander to commander. What was previously awarded as a result of his selection as SSB, Bob received back pay and allowances retroactively. So presumably if it had been followed through and the reports had been favorable and Bob would have been promoted, he would have received back pay and allowances. And, of course, I lost you there because he was promoted. Are you saying there was another promotion beyond the one he got retroactively? No. If he would have, again, we're now back to the next level. We're now back in the realm of speculation because we don't know because Secretary Rosker's order was never directed. It is a red herring as the United States advances to say, well, because Bob was promoted in 1995 at an SSB, that shows that his record wasn't so bad that he could have been promoted absent the direction of Rosker being accomplished. Number one, promotion rates, of course, from lieutenant to lieutenant commander, are certainly higher than they are. As you go up the chain, the promotion rates go down. So that goes without saying. And, obviously, if you have this seven-year gap in an officer's career that is a result of discrimination and reprisal. Tell me your gap is? I'm sorry. Well, you're looking at the 1989 to 1993. Those were taken out because he was discriminated against. The board found that 93, 94 reports and the subsequent passovers were a matter of reprisal. So they ordered the removal. Now, it is true that the BCNR. What's next after lieutenant commander? Commander, 05, then Captain 06. After, it is important that this did not come, Rosker's decision did not come out of thin air. It came from the advisory opinion from B.B. Herman, who was down in Millington, Tennessee, at Bupers. I believe it was relocated down there. And Herman is the director of what? Officer and Evaluation Reports. He knows this stuff better than anyone. And in his advisory opinion, he says Bob's not going to be able to compete unless he has fitness reports that are accurate, unless he has, especially when one considers the previous gap. So he says, I think that new reports should be accomplished. And we know that this can be done. We know it because, number one, the reports are done every single day throughout every branch of the service. This is not rocket science. Let me begin with my very first question to you. Given the lapse of time and the practical considerations here, if you're right, what is the relief? Where are we? If you're right, where are we? The proper remedy is to remand this case to the Department of the Navy, to the Board for Correction of Naval Records for further consideration. What's the further consideration look like? They find someone who knows him, and then they ask him, let's assume that person is now out of the Navy. They find someone who knows him. That person would then submit an evaluation performance, which would be put into his file for the missing periods. Yes. Even though they're out of the Navy, they could still do that? Yes. And routinely, it does happen. I mean, there are correction records dating back to the 1860s for Mr. Mudd, and we won't bore the court with that. Dr. Mudd. Yes, Dr. Mudd, and certainly that is what should happen in this case. I submit at the end of the day, this is a remedial statute. Congress intended for service members under 1552 to have a remedy to correct errors or injustices. The BCNR acted, the Secretary of the Navy through Bernard Roster acted to remedy this error or injustice. What BCRAF did was simply, I see my time is up. Let me ask you this. Judge Amber asked you about the concept of latches, which isn't in the briefs anymore, but what about that? Given the amount of time that's lapsed, and I understand the reason for the amount of time that lapsed between the last Naval action and here, but between the amount of time that the initial order was entered, and then Rear Admiral Wilmot decided that she knows what an order is, but she's going to file something which says on his face is not the performance report. She has ordered a file. Given, and then nothing happened after that for a long, I guess, four years, why wouldn't latches apply to this situation? Well, one, I think that Bob's relying upon Secretary Roster. Two, I think that it is not right until BCRAF says, no, I'm not going to do anything about it. It's as if there's a shrug of the shoulders here. It's like, Bob, you've been around long enough. You've been around long enough. You need to just go away, and we're tired of dealing with this. It's late. Well, the arc of the moral universe is long, but it always extends towards justice. That's not simply. Is that your own or are you quoting someone? You know who I'm quoting. You know who I'm quoting. Bottom line is this is a remedial statute. Congress intended to correct these types of things. This man was racially discriminated against. He was reprised against by exercising his lawful rights. This case should be remanded. Thank you. Mr. Chairman, we'll take the matter under advisement.